**Office of Congressional Workplace Rights**
**John Adams Building, Room LA 200**
**110 Second Street, S.E.**
**Washington, D.C. 20540-1999**

| | |
|---|---|
| **DONGFANG SHAO,** ) | |
|     Employee, the Claimant ) | |
| ) | |
| v. ) | Case Number 23-LC-53 (CV, DA, |
| ) |     AG, FM, |
| ) | |
| **LIBRARY OF CONGRESS,** ) | |
|     Employing Office, Respondent ) | |

### REPORT ON PRELIMINARY REVIEW

Section 4.08(a) of the Procedural Rules of the Office of Congressional Workplace Rights (OCWR) ("Rules") provides that, not later than 7 days after transmission to the employing office of a claim or claims, the Executive Director shall appoint a Hearing Officer to conduct a preliminary review of the claim or claims filed by the Claimant. I have been appointed as the Hearing Officer pursuant to section 4.08(a) to conduct the preliminary review of the claims set forth in the claim form in this case.

The Claimant filed his initial claim on December 4, 2023. Per section 4.08(d) of the Rules, the Claimant was permitted to file one amended claim form as a matter of right within 15 days after the filing of the initial claim form. The Claimant has not filed an amended claim.

As discussed below, Claimant, the Chief of the Asian Division with the Library of Congress (LOC), appears to be raising the following claims:

1. Specifically, the Claimant alleged that he suffered discrimination and harassment (2 U.S.C. Section 1311) based on Race (Asian), Disability (a workplace injury),

1

Color (Yellow), National Origin (China), and Age (70 years old). Claim Form, p. 5.

2. The Claimant also alleged that the agency violated the Family and Medical Leave Act (2 U.S.C. Section 1312), specifically by retaliating against him. Claim Form, p. 5.

3. Additionally, the Claimant alleged that his supervisor took reprisal against him for opposing a practice made unlawful by the CAA, or initiating a proceeding, filing a claim, or testifying, assisting, or participating in a hearing or other proceeding under the CAA. (2 U.S.C. Section 1317). Claim Form, p. 6.

4. The Claimant stated the dates of the alleged violations as: August 2, 2023, August 4, 2023, October 17, 2023, and October 23, 2023. Claim Form, p. 7. He filed his claim on December 4, 2023. Thus, the claim on its face appears to be timely filed under 4.08(c)(3) of the Rules, using the dates of the violations claimed by the Claimant. The Claim Form, on its face, also contains nonfrivolous allegations that, as an employee of the Library of Congress, the Claimant is a covered employee under section 4.08(c)(1) of the Rules, and the Library of Congress is an employing office covered under the CAA.

5. Accepting all allegations in the Claim Form as true, and reviewing these claims in the light most favorable to the Claimant, my preliminary review is as follows:

I. **CLAIMS**

   a. **Claimant's Race (Asian), Disability (workplace injury), Color (Yellow), National Origin (China), and Age (70) - Discrimination and Harassment Claims. 2 U.S.C Section 1311 (CAA SEC. 201)**

1. ***Factual and Legal Issues in the Discrimination and Harassment Claims***

The Claimant stated that the agency discriminated and harassed him because: he is Asian, his color is Yellow, his National Origin is China, he is 70 years old, and because of his disability (a workplace injury). Claimant contends that the agency (specifically his supervisor, Eugene Flanagan, Director of General and International Collections Directorate) discriminated and harassed him by giving him a lower Performance Rating for FY/23, which was neither warranted nor unsupported by his actual performance. The Claimant also alleged that Mr. Flanagan discriminated and harassed him by repeatedly engaging in numerous other prohibited acts, which effectively resulted in a hostile work environment. As noted previously, he also stated the dates of the alleged violations as: August 2, 2023, August 4, 2023, October 17, 2023, and October 23, 2023.

2. ***Relief Sought***

As remedies for the above claims, the Claimant requests the following:

(1)   That Eugene Flanagan, the Director of General and International Collections Directorate, Researcher and Collections Services, be removed from his current position.

(2)   That, besides being removed from his position, Mr. Flanagan be directed to participate in remedial courses, with respect to the LOC's rules and his own obligations to refrain from discrimination against any LOC employees.

(3)   That he be paid Back Pay, based on a readjusted rating-related performance award, with the accompanying salary increase.

(4)   That he be reimbursed for the reduction in his federal retirement benefits, resulting from Mr. Flanagan's erroneous and discriminatory performance evaluations; and

3

(5) That reasonable attorney fees and other costs incurred in relation to this claim be paid.

3. ***Analysis of the Discrimination and Harassment Claims based on Race ((Asian) Disability (a workplace injury), Color (Yellow), National Origin (China) and Age (70).***

The Office of Congressional Workplace Rights (OCWR) is an in or dependent, nonpartisan legislative branch office established to administer and enforce the Congressional Accountability Act (CAA). The CAA prohibits harassment and discrimination in personnel actions based on race, color, national origin, sex, religion, age, or disability. CAA Sec 201 (2 U.S.C Section 1311). It applies the provisions of Title VII of the Civil Rights Act of 1964, the Rehabilitation Act, Title I of the Americans with Disabilities Act (ADA) and the Age Discrimination in Employment Act (ADEA). These provisions require that all personnel actions such as hiring, termination, promotion, and benefits occur free from unlawful discrimination and harassment based on race, color, religion, sex (including sexual orientation and gender identity), national origin, age, and disability.

Harassment is a form of employment discrimination that violates Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act of 1967, (ADEA), and the Americans with Disabilities Act of 1990, (ADA). Harassment is unwelcome conduct that is based on race, color, religion, sex (including sexual orientation, gender identity, or pregnancy), national origin, older age (beginning at age 40), disability, or genetic information (including family medical history). Harassment becomes unlawful where: (1) enduring the offensive conduct becomes a condition of continued employment; or (2) the conduct is severe or pervasive enough to create a work environment that a reasonable person would consider intimidating, hostile, or abusive. Anti-discrimination laws also prohibit harassment against individuals in retaliation for filing a discrimination charge, testifying, or participating in any way in an investigation, proceeding, or

lawsuit under these laws; or opposing employment practices that they reasonably believe discriminate against individuals, in violation of these laws.

In support of his discrimination and harassment claims, the Claimant discussed, at great length, his background, his qualifications, as well as the specific reasons why he believed the FY/23 Performance Review was unsupported, erroneous, discriminatory, and harassing. He also submitted copies of his "Statement of Accomplishments" for his FY/23 Performance Review, his response to the Performance Review that he was given, and his request for review of that rating. Additionally, the Claimant submitted excerpts of numerous emails and text messages from colleagues concerning his performance, statements of praise that was written about his qualifications, and other evidence concerning his performance during the period at issue, in support of his claims. Further, the Claimant alleged that Mr. Flanagan had never been in touch with any Asian Division employees (except for the less than 10-minute meetings he had during the whole year with him), that there were mass departures of Chiefs in the GICD, and retention issues, due to Mr. Flanagan's mismanagement, and that Mr. Flanagan misrepresented his, and other the Asian Division's staff, blaming them with "all kinds of trumped-up charges." Moreover, Claimant alleged that Mr. Flanagan made unwelcome comments about a veteran, that he was disrespectful when addressing the Asian staff, and that he continued to appoint white Acting Directors of the GICD, whose seniority is lower than his.

Additionally, the Claimant alleged that Mr. Flanagan gave him "an unfair and unsupported Performance Review in FY/23" because he reported Mr. Flanagan's mismanagement through the OIC hotline, filed two OCWR complaints against the agency alleging discrimination, and because he filed two lawsuits in 2020 and 2021 (alleging that Mr. Flanagan repeatedly used vulgar, inappropriate and gendered comments, in addition to giving him a lower performance

5

rating and baselessly blaming him for things that he did not know). The Claimant also alleged that he did not know what Mr. Flanagan expected of him, that Mr. Flanagan never provided him with any constructive suggestions, and that Mr. Flanagan "never treated [him] with respect." Further, Claimant argued that that he has a reasonable belief that Mr. Flanagan, by his actions, engaged in a "discriminatory employment practice," that this complaint is a "racial justice issue at its core," and that "[d]emanding workplace climate change and ending racial injustice has been major part of [his] lawsuit."

In addition, the Claimant alleged that, in retaliation for his protected activities, Mr. Flanagan either ignored or downplayed his accomplishments, that he isolated him, and made insulting, demeaning, offensive and crude comments to him, as well as verbal threats. Finally, the Claimant discussed the consequences of his alleged discriminatory and harassing mistreatment by Mr. Flanagan, and the specific damages that he claims to have suffered as a result.

The legal issues presented concerning these claims are whether the Claimant's allegations, if true, would establish: (1) that he was subjected to discrimination and harassment (prohibited under 2 U.S.C. Section 1311) by Mr. Flanagan because of his race (Asian), Disability (a workplace injury), Color (Yellow) National Origin (China) and Age (70), and if so, whether he would be entitled to the remedies he seeks.

Viewing the Claimant's discrimination and harassment claims in the matter most favorable to him, I conclude that he has sufficiently stated a claim for which, if the allegations contained in the Claim are true, relief may be granted under the CAA.

## 4  Potential for Settlement

There is no indication in the file that the parties have engaged in the OCWR's Mediation Program concerning this claim. While, as noted previously, the Claimant had filed two prior

OCWR complaints, and has two related court cases pending, it still may be possible to settle this case if the parties are interested in pursuing it.

### b. The Claimant's Reprisal Claim under 2 U.S.C. Section 1317

#### 1. *Factual and Legal Issues in the Reprisal Claim*

The Claimant additionally alleged Reprisal under 2 U.S.C. Section 1317, and specifically that he "opposed a practice made unlawful by the CAA or initiated proceedings, filed a claim, or testified, assisted, or participated in a hearing or other proceeding under the CAA."

As noted previously, on his Claim Form, the Claimant stated that he had previously filed two OCWR complaints against Mr. Flanagan for discrimination and harassment, and two related lawsuits in 2020 and 2021. In support of his "Reprisal Claim," the Claimant appears to allege that he was reprised against, after filing his prior OCWR complaints, as well as the two related lawsuits, in the same manner, and based on the same facts and incidents discussed previously with regard to the discrimination and harassment claims (in essence his alleged erroneous and unsupported FY/23 Performance Review that Mr. Flanagan gave him, as well as the numerous allegations of mistreatment by Mr. Flanagan).

The legal issues presented in this claim are whether the Claimant's allegations, if true, would establish that Mr. Flanagan took the above actions in reprisal for his engaging in protected activity under the CAA, and if so, whether he would be entitled to the remedies he seeks.

#### 2. *Relief Sought*

The Claimant's remedies for this claim are the same as those discussed above concerning the discrimination and harassment claims.

### 3. Analysis of the Retaliation Claim under 2 U.S.C. Section 1317

Under 2. U.S.C. Section 1317, Reprisal, it is unlawful for an employing office to take reprisal for an employee opposing a practice made unlawful by the CAA, or for the employee to initiate proceedings, file a claim, or to testify, assist, or participate in a hearing or other proceeding under the CAA.

In this case, the Claimant alleged that agency officials took reprisal against him, because of his prior OCWR discrimination complaints and his two related lawsuits that are pending. As with the discrimination and retaliation claims, he specifically alleged that Mr. Flanagan issued what he claims was an unfair and unsupported FY/23 Performance Review, and by taking all of the other actions discussed previously. Timewise, it appears that the FY/23 Performance Review, and the additional actions cited by the Claimant, could have been in reprisal for his engaging in the protected activity identified by this claim.

Viewing the Claimant's "reprisal" claims in the manner most favorable to him, I find that he has sufficiently stated a claim for which, if the allegations contained in his Claim are true, relief may be granted under the CAA.

### 4. Potential for Settlement

See discussion above.

### c. Claimant's Family and Medical Leave Act (FMLA) Claims Under 2.U.S.C. Section 1312

#### 1. Factual and Legal Issues In This Claim

The CAA, Section 202 (2 U.S.C. Section 1312) applies provisions of the Family and Medical Leave Act (FMLA), which entitles employees to take up to 12 weeks of unpaid, job-protected leave for certain family and medical reasons such as birth or placement of a child for adoption or foster care, an employee's serious health condition, or the care of a family member with a serious

health condition. Under some circumstances, employees may take family and medical leave intermittently or on a reduced leave schedule. It is also possible that an eligible employee may choose, or an employing office may require, that an employee substitute vacation, sick or other types of personal leave for some or all of their unpaid FMLA leave.

To establish a FMLA retaliation claim based on circumstantial evidence, a Claimant must show: (1) he availed himself of a protected right under FMLA; (2) he suffered an adverse employment action; and (3) there was a causal connection between the adverse action and the protected activity. It is important to note that a FMLA retaliation claim can be brought even if the employee managed to take the full leave requested.

### 2. *Relief Sought*

See discussion above.

### 3. *Analysis of the FMLA Claim*

On his Claim Form, the Claimant checked the box alleging that the agency violated the Family and Medical Leave Act, specifically by "Retaliation". Claim Form, p. 5. He also alleged on his Attachment to his Claim Form, that Mr. Flanagan retaliated against him for filing such a claim "by purposefully charging his absence to his request to attend onsite meetings to ignore [his] workplace inquiry protected by Department of Labor for medical treatment and telework accommodation by an orthopedic doctor." Attachment to the Claim Form, Section C, p. 4.

While not entirely clear, it appears that the Claimant is alleging that he was improperly charged with an absence that should have been covered by the FMLA, which was instead charged to some other type of leave. It also appears that he is claiming that this was in retaliation for his having filed the prior OCWR complaints, and the two pending lawsuits.

9

Viewing the Claimant's "FMLA" claim in the manner most favorable to him, I find that he has sufficiently stated a claim for which, if the allegations contained in his Claim Form are true, relief may be granted under the CAA.

### 4. Potential for Settlement

See discussion above.

## II.   CONCLUSION

Based on the foregoing, I have determined that the Claimant was a covered employee, with a covered agency, who has filed a timely complaint, and has stated claims of discrimination and harassment under 2 U.S.C. Section 1311, based on (1) Race (Asian), (2) Disability (a workplace injury), (3) Color (Yellow); (4) National origin (Chinese), and (5) Age (70). He additionally stated claims of "Reprisal" under 2 U.S.C. Section 1317, and Family and Medical Leave under 2 U.S.C. Section 1312 (Retaliation). With regard to all of the above claims, I have determined that, if the allegations contained in the Claim Form are true, relief may be granted under the CAA.

## III.   NOTICE TO THE CLAIMANT CONCERNING ELECTION OF FORUM

Pursuant to section 4.08(f)(1) of the Rules, this Report serves as written notice to the Claimant that he may either elect an administrative hearing on all claims asserted in his claim form, or file a civil action as provided under section 408 of the CAA concerning all claims in his claim form, but he may not do both. Once the Claimant has made this selection, it is final and cannot be changed.

To elect an administrative hearing before an OCWR Merits Hearing Officer, the Claimant must file the attached **Request for Administrative Hearing** (Attachment B) with the Executive

Director of the Office of Congressional Workplace Rights not later than **10 days** after receiving this written notice, i.e., January 8, 2024.

A civil action must be filed not later than **70 days** after the initial filing of the claim form. Pursuant to section 4.05(d) of the Rules, a claimant filing a civil action must notify the OCWR within three (3) days of the filing.

It is so **DETERMINED**.

_____
Michelle M. Hudson
Preliminary Hearing Officer

Dated: December 29, 2023

**CASE NO. 23-LC-53 (CV, DA, AG, FM, RP)**

Copies of this report have been provided to:

**EMPLOYEE:**

Dongfang Shao
15463 Arnold Palmer Drive
Haymarket, VA  20169
(650) 353-8821
(571) 830-6073
dfshao@hotmail.com

**EMPLOYEE'S REPRESENTATIVE**:

Jonathan Axelrod, Esq.
1717 K Street, NW
Suite 927
Washington, DC  20006
(202) 365-1610
Jaxelrod@beinsaxelrod.com

**EMPLOYING OFFICE:**

Margaret Williams, Esq.
Library of Congress
101 Independence Avenue, SE
Washington, DC  20540
(202) 707-4838
mwil@loc.gov

**OCWR Executive Director**

Patrick Findlay
Executive Director
Office of Congressional Workplace Rights
110 Second Street, SE, Room LA-200
Washington, DC  20540-1999

# Attachment A
# Notice Regarding Possible Right to an Administrative Hearing

Pursuant to section 405(a) of the Congressional Accountability Act of 1995 (CAA), as amended by the Congressional Accountability Act of 1995 Reform Act, you are being informed that you may have a right to request an administrative hearing with the Office of Congressional Workplace Rights (OCWR) Executive Director. A request for an administrative hearing under this section must be submitted **NO LATER THAN TEN (10) CALENDAR DAYS** after the Preliminary Hearing Officer submits a report on the preliminary review of your claim, as specified in your cover letter. **IF YOU FAIL TO MAKE YOUR HEARING REQUEST BY THE DATE SPECIFIED, THEN YOUR HEARING REQUEST WILL NOT BE ACCEPTED.**

**If you are entitled to an administrative hearing**: If the Preliminary Hearing Officer has found that you are a covered employee who has stated a claim for which, if the allegations contained in the claim are true, relief may be granted under the CAA, then you may either (i) request an administrative hearing with the OCWR pursuant to section 405 of the CAA, or ii) file a civil action in the United States District Court pursuant to section 408 of the CAA within 70 days of the date the claim was filed. Once you select either an OCWR administrative hearing or a Federal District Court proceeding, your selection is final and irrevocable. *You may not file a request for an administrative hearing if you already have filed a civil action as provided by section 408 of the CAA regarding the claim.*

If you are entitled to an administrative hearing with the OCWR, the Executive Director shall appoint an independent Merits Hearing Officer pursuant to section 405(c) of the CAA to consider the claim and render a decision.

> *Your request for an administrative hearing with OCWR must be in **writing**. There is a hearing request form enclosed on the next page (Attachment B). If you elect an administrative hearing, you must complete the form and email it to ocwrefile@ocwr.gov or fax it to (202) 426-1913. You may also mail your request to the Office of Congressional Workplace Rights, Adams Building, Room LA-200, 110 Second Street, SE Washington, D.C. 20540. Note, however, that delays in mail delivery to Capitol Hill may make your request untimely.*

**If you are not entitled to an administrative hearing**: If the Preliminary Hearing Officer has found that you are a covered employee who has ***not*** stated a claim for which, if the allegations contained in the claim are true, relief may be granted under the CAA, then you *only* may file a civil action in the United States District Court pursuant to section 408 of the CAA.

## Attachment B

### REQUEST FOR ADMINISTRATIVE HEARING

To:  Executive Director, Office of Congressional Workplace Rights

Re:  Case name: _____

   Claim No.: _____

I hereby state that the Preliminary Hearing Officer has determined that I have established a cognizable claim in one or more of my claims, and that I therefore have the right to request a hearing.

I request an administrative hearing before a Hearing Officer appointed by the Office of Congressional Workplace Rights to resolve the claims in the above-referenced case.

   Dated: _____

   _____
   Signature of Covered Employee or Designated Representative